Our first case this morning is Benjamin v. Agriculture. Good morning. May it please the court. I'm Richard Link. I have the honor of representing Adeline Benjamin, the petitioner, in this case. We are here on an appeal from the Merit System Protection Board. This is an employment case. The standard of review is pretty clear. It's been articulated by statute and by this court. I would just like to go over some of the reasons why we feel that this is an appropriate case for reversal and remand. Let me start with the issue that I raised in the brief, the issue of nexus. One of the issues that came up at the hearing and one of the things that an agency must prove in a removal of the case is that somehow there is a nexus between the alleged misconduct and the efficiency of the service. This was a burden borne by the respondent down below. I would respectfully submit that based upon this record, there is insufficient evidence of any type of nexus. I guess I'm a little unclear. You recognized our standard of review. Your client was charged with not following supervisory instructions and with disrespectful conduct, correct? That's correct, Your Honor. Do you acknowledge that those allegations, if proven, have a nexus to the efficiency of the service? I would say that the allegations as stated, there was no proven nexus to the efficiency. But if proven, there would be a nexus to the efficiency of the service. Am I correct? Well, it depends. There are several specifications on each. I can think of one that didn't have one. For example, there was an allegation that the petitioner, Ms. Benjamin, did not render assistance with what they called the AIMS help desk, a computer issue. And I think the employee who testified, who was Ms. Hicks, said she couldn't think of any adverse harm that came to the agency or to the customer as a result of what they alleged Ms. Benjamin did in that particular case. But in general, I guess the question I have is if you agree that in general, many if not most of the charges related to the efficiency of the service, then what we're down to is whether or not there was sufficient evidence to establish the accuracy of those charges, right? If one accepts that it's a basis for removal, yes, that's correct. That would be the logical conclusion. So how under the standard of review that we have, which is fairly deferential, can you establish that there was not sufficient evidence to affirm the charges? Well, Your Honor, as indicated, there were two charges that were leveled against Ms. Benjamin. The first was a Charge 1, which was failure to follow supervisory instructions. And Charge 2, as you've indicated, was reputed acts of disrespectful conduct towards the supervisor. As I've indicated in my brief, the agency really didn't put forward much of any testimony by way of the supervisors or the co-employees at the Charge 1. Now the government's response to that is, well, there's not necessarily a requirement that testimony be adduced if there is documentary evidence in the form of the agency file, which is made into evidence at the MSPB. I would argue that one cannot just simply sit back and say, well, we have the documents and evidence. The supervisor says she read the statement of proposed removal. It was a sufficient basis to discharge her. I would argue that if, in fact— As I understand it, what happened was the documents were put in evidence, correct? That's correct. And the witness, the supervisor, basically sort of adopted them and said, I stand by what I said there, correct? Yes. And, of course, she was subject to cross-examination, right? That's true, Your Honor. What is the problem with that? She says, I stand by what's reflected in these documents. I basically reiterate what's in the documents. And at that point, she's subject to cross. Well, many of the issues, by way of backing up, Ms. Benjamin was put under a performance improvement plan. She was required to meet with the supervisor weekly and submit status reports. The evidence clearly showed that Ms. Benjamin went to every single meeting. She submitted reports at every meeting. Now, much of the allegations in Charge 1, which is the charge where I'm saying there's not testimony on those issues, the issue is whether the documents that Ms. Benjamin submitted at these meetings contained a sufficient amount of detail. I would argue that those documents, the status reports, were in evidence. They didn't contain complete detail about Ms. Benjamin's activities. They contained a lot of detail about the customers she was dealing with and what she was doing on a weekly basis. So I think I'm arguing that Ms. Benjamin, in her own submission and in her testimony, rebutted the allegations in Charge 1. But we're in appellate court here. And what you're telling us is if we look through the documents and evaluate each document and look at the record, somehow we might reach a different conclusion than the A.J. reached. And you're also putting a layer on top of that, which is he shouldn't have believed the other witnesses. He or she, the A.J., should have believed your client. How are we as an appellate court supposed to perform that function? Well, I understand that it's a deferential standard of review. But that having been said... Extremely deferential with respect to credibility determinations, correct? Correct. But I guess I was saying if the A.J. relied upon documentary evidence and not testimony, I'm not sure how you get to credibility just based upon a document that Ms. Benjamin and her witnesses rebutted. I would also, on that particular point, point out that there was other evidence that I don't think that the A.J. properly examined. For example, and I just want the owners to keep this in context, your Honor Appellate Court, this is a small agency office, eight people that the supervisor was in charge of. You could probably fit this part of the Department of Agriculture within the well of this court. Mr. Link, we see in the record here kind of a progressive group of disciplinary actions taken against Ms. Benjamin, starting in 2000 with letters of caution, progressing to letters of reprimand, progressing to suspensions. Doesn't that lend credibility to the efforts that were made to try and help her achieve some kind of improvement? Well, certainly that's the agency's argument. Our position is that this discipline that you pointed to in the past was an effort by the supervisor or supervisors to retaliate and get back against Ms. Benjamin. Obviously, the court would have to be inclined to believe that there was insufficient basis for the evidence against Ms. Benjamin to reach the issue as to whether there was reprisal in violation of federal EEO law. But yes, that is the background. If I understand correctly, after each one of these almost, she filed an EEO complaint.  That's correct, Your Honor. The EEO didn't find any particular discriminatory or retaliatory purpose in these actions, right? That's correct. Unfortunately, Ms. Benjamin took those to federal court. She did not have an opportunity for a trial because some of her judgment was granted in favor of the agency. I will say just to respond to the court's question on the prior discipline, the most recent discipline that Ms. Benjamin was subject to before the removal. The removal occurred in June or September. I think the proposal came out in July of 2006. The actual removal came out in September. February of 2006 was the last disciplinary action that Ms. Benjamin had been subject to. But going back prior to that, it was much older, and I pointed to that issue in my brief. There's a gap there, but still, there's kind of a sense that Ms. Benjamin should have been aware that there were a lot of concerns over her performance over a period of time. I understand, but I also raised this issue, and I'd like to point it out for the court, and that is the types of issues that gave rise to the removal, making unusual faces at the supervisor or insufficient status reports. If the court looks at the history, and I've been involved in the prior cases, don't recall ever seeing any type of discipline for those particular, peculiar types of allegations. And I think that it seems that the agency was just reaching to find something on Ms. Benjamin by saying, well, these are removable offenses. You're coming to a meeting, but you're making unusual faces. You're giving me status reports, but they're insufficient. You help somebody at this AIMS help desk. There's no adverse problem. You're not a computer person. You did your best, but you didn't follow the exact letter of our procedure. So with regard to the notice and the prior discipline, I would say she's not on notice of this particular type of misconduct would lead to removal. That having been said, I understand that there have been certain findings, but Ms. Benjamin's always disputed the factual basis for the prior discipline and the discipline. In this particular case, I do, going back to the court's question as far as what power this court has, even accepting the record, I think there's case law to support the notion that discipline cannot be unconscionably disproportionate. I would argue that there is authority to mitigate the penalty,  given the fact that we don't have somebody stealing or what we would consider probably egregious offenses. We have, at best, disagreements between a supervisor and employee over making faces, insufficient status reports, did you follow the proper procedure, going to the help desk, were you a few minutes late to a meeting, and they're piling up on each of these charges. But if there isn't sufficient evidence of efficiency to the service, and if these are relatively minor, each and every one of them offenses, even assuming that they're true, then I think there is a basis to say, did they properly mitigate the penalty? The decision maker, who is the supervisor who ultimately handed down this removal, he was a, he had been involved in all this prior discipline, and you'll see a letter. Did you wish to save the remainder of your rebuttal time? I did. Oh, okay. But for that, he had been involved in this prior discipline, and I would argue that certainly calls into question whether he was in a position to properly consider mitigation of the penalty on these facts. Thank you. Thank you, Mr. Link. Ms. Hogan. Good morning, Your Honors. May it please the Court. Ms. Benjamin's removal from federal service for her repeated failure to follow supervisory instructions and her disrespectful conduct towards her supervisor was supported by substantial evidence and should be affirmed. To address Mr. Link's first point with regard to nexus, of course, this Court reviews nexus on a substantial evidence standard of review. And there is something that strikes me a little unusual about these. I mean, these charges seem to include both conduct and performance elements, and I don't know if that's normal. I mean, if it were just a performance issue, then we'd have a lower standard of review in terms of the government, but I guess the government would also have to have gone through various bells and whistles in order to effectuate that, which I assume they did not do here. Correct. So that's why they merged the two. Correct. And certainly Ms. Benjamin has never contested that it was a misconduct case and it should have been a performance case, but this court in Lovshin, an en banc decision, I believe in 1985, said that the agencies are free to pursue performance removals or misconduct removals based upon performance. So there's certainly no barrier to the agency removing an employee for her failure to follow supervisory instructions, even if that strikes the court as being performance related. And in fact, the failure to follow supervisory instructions was listed in the agency's table of penalties under a type of misconduct for which an employee could be removed from federal service. So we don't think that that is an issue that would be relevant, I guess. A second thing that struck me a little about this case is that while obviously we defer a great deal to credibility determinations, here the AJ relied on the credibility of Carolyn Hicks. I mean, he says they struck me as earnest and genuine and their testimony was consistent with the voluminous documentary evidence, but when you go back to the AJ's opinion, it seems to me at least Ms. Carroll and Mr. Carroll didn't really testify other than to say everything in the record that happened is my best view of what actually happened. Is that the kind of appropriate testimony in which we would give substantial deference to a credibility finding? Yes, Your Honor. We agree that there is limited testimony from Ms. Carroll about every single specification. And she did testify on page 635 that what she wrote in her notice of proposed removal was an honest reflection of the events that happened. So she incorporated that document by way of her testimony. But she did testify before the judge and she did provide testimony about some of the other charges against Ms. Benjamin. And so the administrative judge did have an opportunity to consider her demeanor and her credibility and to determine whether her story was consistent with the testimony of other witnesses. And so even if she wasn't testifying about each specific specification, the administrative judge certainly had an opportunity to consider her demeanor and see whether she was, in general, someone whose testimony would be, he considered to be truthful. And he made specific credibility determinations on page 24, 25, and 36 of the opinion that the agencies... Ms. Hogan? Yes. Am I giving you a menacing look? I'm not sure how to answer that, Your Honor. Probably not. But that's, of course, the point of the question is that looks and giggles and other things of that nature can be pretty subjective. If I had preceded that with a little anger in my question, you might have thought I was menacing. Is there an element of subjectivity in this record that we ought to worry about? There's certainly an element of subjectivity, but it's not anything that this court needs to worry about. And that's exactly why we have an administrative judge to consider testimony from all the parties, to consider whether the giggle was disrespectful or in the context of a joke that the two parties were telling each other. And Ms. Carroll, the supervisor, said that this was just one of many menacing and grimacing looks that Ms. Benjamin gave her in an attempt to intimidate her. And Ms. Benjamin testified that, in fact, it was Ms. Carroll who was always giving her looks. And the administrative judge concluded that that was not credible testimony. Well, is the standard, just following up on Judge Rader's comment, is the standard whether Ms. Carroll was menaced by the look or whether a reasonable person would have been menaced by the look? The standard is, I believe, whether a reasonable person would have found this to be disrespectful conduct towards the supervisor. And again, the charge was not that she giggled. I mean, those were the specifications, but the charge was that her conduct towards her supervisor was not in the respectful manner that supervisors are entitled to expect from federal employees. The next issue that Ms. Benjamin raises is the issue of retaliation. And, of course, before the MSPB, Ms. Benjamin bore the burden of demonstrating that the disciplinary action was taken in retaliation for her prior EEO activity. Ms. Benjamin failed to meet that burden, and she's raised no reason for this court to reverse that issue. Another issue that Ms. Benjamin raises is that she wasn't apparently specifically notified that her failure to follow a particular instruction could lead to disciplinary action. And, of course, that would require an agency, every time a supervisor gave an instruction to follow up with a warning, that the failure to follow that particular instruction could lead to disciplinary action. On page 235 of the Joint Appendix, Ms. Benjamin was warned in her suspension in February of 2006 that her continued failure to follow supervisory instructions could lead to her removal. So she was clearly personally notified that her continued failure to follow instructions could lead to discipline and, in fact, her removal. And for that reason, again, there's no error in the administrative judge's refusal to mitigate the penalty and the agency's decision not to mitigate the penalty. There was ample evidence that prior lesser penalties had been unsuccessful in an attempt to have Ms. Benjamin conform to the agency's conduct requirements. This Court has no other questions. We would respectfully request that the Court affirm the judgment of the MFPB. Thank you. Thank you, Ms. Hogan. Mr. Link. Yes, thank you, Your Honor. I just want to follow up on the Court's questions about menacing looks. I think it was a very astute question.  at the administrative level. One was testimony from Sherry Carroll, who was the proposing official, and that's found at the Joint Appendix 618 to 619, who said words to the effect that puckering lips or leering at someone should not be the basis for removal. And Curtis Wolburn, who we've discussed, who was the actual deciding official at page 706 of the Joint Appendix, who said words to the effect that it would not be appropriate to remove an employee from making an unusual facial expression or puckering lips, which, as I understood it, was an unusual testimony and it struck me at the time because that's part of one of the specifications that's listed as disrespectful conduct towards supervisors. I pointed out in the brief also that there were no independent witnesses. As far as credibility findings, I understand that there was, as the Court has noted, a highly deferential standard of review, but I think the words used by the administrative law judge should be- Mr. Link, we have, with regard to the menacing looks, we don't have just the testimony of one person, do we? We have Ms. Carroll, Mr. Wolburn, and others saying, yes, her conduct caused me some concern as well. Doesn't that corroborative nature of the records suggest that the government has a point? Well, I would say, again, I don't want to quibble about the facts. I don't know if- I think Mr. Wolburn and others said they saw those looks on other occasions. I don't know on the particular occasions that they arrived at the specifications. But the evidence did show that Ms. Benjamin did not curse or yell or scream at her supervisor. No, it was disrespectful that they were mostly concerned about, and more than one of her supervisors had the same reaction. That tends to suggest that it's not just the subjective opinion of a single person who could have misapprehended the nature of the look or the nature of the giggle. But when it starts to be more than one, it does have a reinforcing nature, doesn't it? Well, I'll accept Your Honor's point. However, I would still say that if there's no cursing or overtly disrespectful conduct, not coming to the meeting or not providing status reports or yelling at the supervisor, something that you could objectively point to and say this is disrespectful, I think it would give more weight. Isn't it possible, Mr. Link, that instead of just having an outburst, a pattern of a particular kind of facial expression or giggling over a period of time indicates in some ways, I don't want to use the word sinister, but I mean indicates a modus operandi that is very studied and can equate to being disrespectful? Yes, Your Honor. However, I would then say, assuming that it occurred, how does that lend itself to showing some nexus to the efficiency of the service if I have testimony from somebody like this gentleman in Hawaii, Miles Taniguchi, who said, contrary to the specifications, that in fact Ms. Benjamin was following up with this coffee rust project, which was something she was supposed to do. He wasn't in a supervisory role with respect to her, was he? No, but he was outside of that particular nine-person office. I mean, I think this charge relates to being disrespectful to the supervisor, and if one accepts that disrespectfulness exists, it does seem that that almost ipso facto, there's a nexus. I would argue Ms. Benjamin's job was to provide service to customers, much like a lawyer's job is to provide service to clients, and we had testimony from these people who would refute that there was some type of adverse impact on the efficiency of the service. Thank you, Mr. Link. Thank you, Your Honor.